### UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO.

District Court, D. Maryland.   March 23, 1928.

No. 3065.

**1. Limitation of actions �désign47(3)—Limitations begin to run against liability of government official's sureties as soon as indebtedness is incorporated in statement properly rendered (6 USCA § 5).**

Act Aug. 8, 1888, § 2 (6 USCA § 5), providing that, if, on the settlement of the account of any official of the United States by the accounting officers of the treasury, it appears that he is indebted to United States, and suit therefor shall not be instituted within five years thereafter, his sureties shall not be liable for such indebtedness, was intended to protect sureties from stale claims, and limitations begin to run against claim as soon as such indebtedness is incorporated in any statement of account properly rendered.

**2. Limitation of actions ⨐47(3—Government's claim against surety on official's bond held barred five years after "statement of account" was rendered, notwithstanding subsequent statement within five years (6 USCA § 5).**

Where government in 1915 stated an account showing balance due from Consul General of over $11,000, but thereafter on reaudit credits were allowed which reduced claim to $2,722.22 in 1924, when another statement was rendered, said official having meanwhile died in 1918, and amount claimed in second statement being part of item embraced in first statement, *held,* that action against surety on official's bond was barred by limitation under Act Aug. 8, 1888, § 2 (6 USCA § 5); first statement rendered being "statement of the account" showing that official was "indebted to the United States" within statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Statement of Account.]

At Law. Action by United States against the United States Fidelity & Guaranty Company. Judgment for defendant.

A. W. W. Woodcock, of Baltimore, Md., for the United States.

J. Kemp Bartlett Jr., of Baltimore, Md., for defendant.

COLEMAN, District Judge. This is a suit brought by the government against the surety on a corporate bond given by John E. Jones, in connection with his official position as Consul General at Genoa, Italy, in 1913, to recover an alleged shortage in this official's account with the government. The question for decision is one of limitations, and turns upon the proper construction to be placed upon section 2 of the Act of August 8, 1888 (6 USCA § 5; 25 Stat. 387), or more precisely upon the meaning of the words "statement of the account" as contained in that enactment.

It appears that on June 30, 1915, the government stated an account showing a balance due from the Consul General to the United States of $11,328.42. Between that time, however, and October 28, 1924, when the second and last statement of account on which the government is now relying, was rendered, certain credits were allowed to the Consul General reducing the balance of his indebtedness to $2,722.22. The additional credits were the result of an explanation given to the government by the official, resulting in a reaudit of his account. It appears that at or about the time of the first statement of account, Mr. Jones was transferred from Italy to another consular post in France, and that he died in 1918. The present suit was instituted October 19, 1926. The government pleads, in furthering extenuation of the long delay, the intervention of the World War. The surety, on the other hand, maintains that the delay works a hardship upon it if recovery be allowed, because its principal has been dead for some eight years and his estate settled. The section in question is as follows, and allows five years within which to institute suit after statement of the account, so that, if the statement contemplated by the act is the first statement, as defendant contends, the present suit is brought too late, but it is within the five-year period if the second, or final, statement is the one from which the five-year period must be considered to run:

"If, upon the statement of the account of any official of the United States, or of any officer disbursing or chargeable with public money, by the accounting officers of the Treasury, it shall thereby appear that he is indebted to the United States, and suit therefor shall not be instituted within five years after such statement of said account, the sureties on his bond shall not be liable for such indebtedness." 6 USCA § 5.

[1, 2] The obvious purpose of the statute is to protect sureties from stale claims on their bonds of this character. This is emphasized by section 1 of the same act (6 USCA § 4), which provides for notice to the surety of the principal's delinquency, as follows:

"Whenever any deficiency shall be discovered in the accounts of any official of the United States, or of any officer disbursing or chargeable with public money, it shall be the duty of the accounting officers making such discovery to at once notify the head of the department having control over the affairs of said officer of the nature and amount of said deficiency, and it shall be the immediate duty of said head of department to at once notify all obligors upon the bond or bonds of such official of the nature of such deficiency and the amount thereof. Said notification shall be deemed sufficient if mailed at the post office in the city of Washington, District of Columbia, addressed to said sureties respectively, and directed to the respective post offices where said obligors may reside, if known; but a failure to give or mail such notice shall not discharge the surety or sureties upon such bond."

See Smythe v. United States, 188 U. S. 156, 177, 23 S. Ct. 279, 47 L. Ed. 425.

There is, nevertheless, a certain ambiguity in the phraseology of section 2, in that nothing is said in regard to whether a first or final statement of account is referred to. It must appear from the statement that the official "is indebted to the United States," but beyond this the language of the act is not specific. The government seeks to take advantage of this, and claims that it is therefore entitled to such time as it may require to re-examine and finally audit the official's account, even though such may consume, as it did in the present case, more than nine years, and presumably even though the major portion of this delay cannot be attributable to conduct of the official himself because, although it does appear that the re-auditing of the first account worked a distinct advantage to the official, he rendered to the government such explanation as he had to give in 1917, and died in 1918. Furthermore, it is important to note that the dispute over his account grew out of an item of $3,000, which was embraced in the first statement of account, and which is the item

claimed to be due by the government in its final statement, less a minor deduction.

Granting, as the government contends, that, under the circumstances of the present case, the statement of account of June 30, 1915, was merely a preliminary statement, submitted to the official with a request for information, the court is nevertheless of the opinion that this, and not a later one, must be taken as the statement contemplated by the act. It was a statement showing that the official was "indebted to the United States." This fact alone seems to be controlling when we take into consideration the obvious, primary object of the act which is to require promptness on the part of the government in notifying and seeking to hold sureties responsible on their bonds. It is, of course, true that, under this construction, the government may be forced into litigation in a case where its figures are obviously subject to correction, and a judgment may even be obtained on an account, a further audit of which would prove its incorrectness. These are considerations which might work to the disadvantage, rather than in favor of the surety. But they do not appear to the court to be entitled to as much consideration as is the broad purpose underlying the statute as a whole. We are concerned, not with some special case, but with a general, underlying motive for all cases. As a matter of fact, the first written notice given to the surety of default appears to have been by letter dated April 6, 1926.

This precise question appears never to have been passed upon by the courts, but the construction adopted seems to be supported in 22 Op. of Attys. Gen. 611, rendered in response to a request from the Secretary of the Treasury to be advised as to when the limitation in this act within which suits might be brought upon the official bonds of disbursing officers, begins to run; that is, the same question that we have here. The Attorney General, in analyzing the language of section 2 as well as of section 1 of the act, said (pages 612, 613):

"The statute is absolute in its discharge of the sureties if suit on the bond be not instituted 'within five years after such statement of said account' by the accounting officer of the Treasury. And it makes no exception in case the accounting officer does not make such statement as early as he should, or when a deficiency is discovered by him."

"* * * Whether the accounting officer makes the statement showing an indebtedness to the United States as early as he should, or does not, I am of opinion that the limitation fixed by section 2 of that act begins to run only from the time that the accounting officer of the Treasury makes the statement of account showing an indebtedness to the United States, as provided in that section."

In 1872 there was enacted a statute (R. S. 3838 [39 USCA § 40]) somewhat similar to the one now under consideration, which reads as follows:

"If on the *settlement* of the account of any postmaster it shall appear that he is indebted to the United States, and suit therefor shall not be instituted within three years after *the close of such account,* the sureties on his bond shall not be liable for such indebtedness." (Italics inserted.)

This earlier act, which is a special one relating only to postmasters, was not expressly repealed by the later act, nor would it appear to have been repealed by implication. See United States v. Maxwell (D. C.) 286 F. 740; United States v. Cash (C. C. A.) 293 F. 584. R. S. 3838, superseded the following act (Act of March 3, 1825, § 3; 4 Stat. 102):

"That it shall be the duty of the Postmaster General, upon the appointment of any postmaster, to require, and take, of such postmaster, bond, with good and approved security, in such penalty as he may judge sufficient, conditioned for the faithful discharge of all the duties of such postmaster, required by law, or which may be required by any instruction, or general rule, for the government of the department: Provided, however, that, if *default* shall be made by the postmaster aforesaid, at any time, and the Postmaster General shall fail to institute suit against such postmaster, and said sureties, for two years from and after *such default* shall be made, then, and in that case, the said sureties shall not be held liable to the United States, nor shall suit be instituted against them." (Italics inserted.)

In addition to the fact that with each succeeding enactment, the period of limitations was increased, we have the further significant fact that the first of these statutes uses the words "settlement" and "closing" in connection with the account, and the second one uses the word "default" in connection with the principal, whereas, in the statute now before us for construction, these words are all eliminated. It is at least a reasonable inference from the evolution of these statutory enactments, taken together, that, had Congress intended, after being more liberal in the matter of limitations, also to impose no stricter requirements with respect to ac-

counts of officials in general than it imposed with respect to those of postmasters only, it would have adopted, in the act of 1888, the same phraseology employed in one of the earlier special acts. The general act includes "any official of the United States," and "any officer disbursing or chargeable with public money." The court cannot ignore the fact that Congress may have had in mind the greater difficulties incident to settling accounts with certain other government officials than would be incident to the accounts of postmasters, because, perhaps, of the greater sums of money frequently involved in the duties of the former, their absence from the country, and a variety of other reasons. This alone would tend to indicate some basis for a difference in phraseology. In any event, the difference exists and seems to add strength to the construction here applied to the act of 1888 that the surety is entitled to prompt notice as soon as it appears that his principal is indebted *in any amount* to the United States, and that as soon as such indebtedness is incorporated in *any* statement of account rendered by the proper accounting officer, the period of limitations must begin to run. Any other construction would seem to place sureties too much at the mercy of accounting officers of the government, would encourage unreasonable delays, if not inaction on the latter's part, and thereby be in direct conflict with the fundamental purpose of the act, which is to require reasonable diligence on the part of such officers in dealing with sureties.

Judgment must therefore be entered for the defendant.